IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**

EFREN IRIZARRY-COLON,

    **Defendant.**

**Criminal No.** 11-231 (FAB)


**OPINION AND ORDER**[1]

BESOSA, District Judge.

On October 22, 2014, Efren Irizarry-Colon ("Irizarry") pled guilty to conspiring to defraud the United States Department of Agriculture in violation of 18 U.S.C. section 371.[2] (Docket No. 104 at p. 1.) The guilty plea was conditioned on Irizarry's right to appeal this Court's previous four dismissals of the case without prejudice on the basis of alleged violations of the Speedy Trial Act and the Fifth and Sixth Amendments to the United States Constitution. Id. at p. 5. The First Circuit Court of Appeals vacated the Court's denial of Irizarry's Sixth Amendment claim, remanded for reconsideration, and affirmed all other aspects. (Docket No. 136 at p. 2.) The Court requested (Docket No. 139)

---

[1] Ian Joyce, a second-year student at Vanderbilt University Law School, assisted in the preparation of this Opinion and Order.

[2] His illegal conduct was in relation to the process of evaluating, approving, and disbursing emergency loans. See Docket No. 104 at p. 1.

and Irizarry and the United States filed, supplementary memoranda

discussing the four factors set forth in Barker v. Wingo, 407 U.S.

514, (1972).  (Docket Nos. 145, 146 and 147.)  For the reasons

that follow, the Court **GRANTS** Irizarry's motion, and **DISMISSES** the

indictment **with prejudice**.

I.    **BACKGROUND**

     After Hurricane Georges struck Puerto Rico in 1998, Irizarry

acted as a closing agent for the Farm Service Administration

("FSA") and as an attorney for emergency and operating loans

disbursed to farmers in the Arecibo region in Puerto Rico.  (Docket

No. 104 at p. 9.)  Between September 1998 and September 2000,

Irizarry participated in a conspiracy to defraud the United States

government.  Id. at p. 9.  In essence, the fraud involved:

> [F]iling of applications for emergency loans for farmers
> through the FSA [. . .]  The applications would contain
> false information and would also be accompanied by false
> documentation.  [Irizarry] would not timely present the
> mortgages for recording at the Property Registrar, at
> the time of the disbursement of the loans, contrary to
> his obligations as closing agent, thereby deceiving FSA
> into believing that the loan had not yet closed, and as
> a mechanism to delay the collection of payments by the
> FSA from the particular farmers.

Id. at pp. 9-10.

     Irizarry was first indicted on July 28, 2005.  He was arrested

and arraigned on August 4, 2005.  (Criminal No. 05-258, Docket

No. 98 at p. 1; and ECF Docket No. 136 at p. 3.)  Irizarry filed

his first motion to dismiss pursuant to the Speedy Trial Act ("STA") on January 29, 2007. <u>See</u> Criminal No. 05-258, Docket No. 81. The Court found that 294 non-excludable days had elapsed, well beyond the 70-day STA requirement, and dismissed the case. <u>Id.</u> at Docket No. 98 at p. 4. Because of the seriousness of the offense, the lack of governmental bad faith, and the lack of prejudice towards Irizarry, the dismissal was without prejudice.[3] <u>Id.</u> Docket No. 98 at p. 5.

Irizarry was subsequently re-indicted on April 4, 2007. (Criminal No. 07-146, Docket No. 1.) The Court set trial for August 17, 2009, a date that was 140 to 148 non-excludable days after the indictment.[4]  <u>Id.</u> Docket No. 52 at p. 4; ECF Docket No. 146 at p. 5. The date was agreed upon by both the government and Irizarry, but the Court did not find tolling. (Criminal No. 07-146, Docket Nos. 52 at p. 4 and 76 at p. 3.) Irizarry moved, for a second time, to dismiss pursuant to the STA. <u>Id.</u> at p. 12. The Court dismissed again without prejudice. <u>Id.</u> at pp. 5-7.

---

[3] The Court also found that Irizarry had the opportunity to file for dismissal earlier but chose not to. (Docket No. 98 at p. 5.)

[4] The Court, the government, and Irizarry did not realize the error at the time. (Criminal No. 07-146, Docket No. 76 at p. 9.) Irizarry discovered the problem later when doing research on the STA. <u>Id.</u>

Irizarry was indicted a third time on January 27, 2010.
(Criminal. No. 10-024, Docket No. 1.)  The Court set trial for
May 11, 2010.  Id. Docket No. 10.  On March 8, 2010 the Supreme
Court of the United States ruled in Bloate v. United States that
pretrial motions were no longer automatically excludable, placing
the May 11 trial beyond the 70-day STA requirement.  Bloate v.
United States, 559 U.S. 196, 213, 130 S.Ct. 1345, 176 L.Ed.2d 54
(2010).  On May 12, 2010, Irizarry moved to dismiss pursuant to
the STA, and the Court, concluding ninety non-excludable days had
passed, granted the motion.  (Criminal No. 10-024, Docket No. 31
at p. 5.)  The Court found that (1) the government had plenty of
time to react to the Bloate ruling; (2) it was the government's
duty to move a criminal case promptly to trial; and (3) it was the
third time the United States had failed to follow the STA time
frame.  Id.  Docket No. 31 at pp. 6-9.  Nevertheless, the Court
again dismissed without prejudice, for reasons similar to the first
two dismissals.[5]  Id. Docket 31 at pp. 10-11.

---

[5] In the third dismissal, the Court evaluated Irizarry's claims
pursuant to the Sixth Amendment Barker test.  (Criminal No. 10-
024, Docket No. 31 at p. 12.)  The Court performed its Barker
inquiry premised on the notion that the relevant time period in a
Sixth Amendment claim begins upon the most recent indictment.  Id.
at p. 13.)  Because the First Circuit Court of Appeals vacated the
Court's similar analysis in United States v. Irizarry-Colon, this
analysis only partially informs the Court's holding here.  Cf U.S.
v. Irizarry-Colon, 820 F. Supp. 2d 306, 314 (D.P.R. 2017) (Besosa,
J.) aff'd in part, vacated in part 848 F.3d 61 (1st Cir. 2017).

Irizarry was indicted for the fourth and final time on June 17, 2011. (Docket No. 1.) Irizarry filed another motion to dismiss pursuant to the STA and Fifth and Sixth Amendments. (Docket No. 17.) The Court denied the motion in its entirety. United States v. Irizarry-Colón, 820 F. Supp. 2d at 314.

The case was subsequently appealed and the First Circuit Court of Appeals affirmed in part, vacated in part, and remanded the case back to the Court for further consideration. United States v. Irizarry-Colón, 848 F.3d 61 (1st Cir. 2017). The First Circuit Court of Appeals found that the timing of the Sixth Amendment claim began on the first indictment (July 28, 2005), making the delay *per se* prejudicial and requiring the Court to conduct a full Barker analysis. Id. at 70.

**II.   LEGAL STANDARD**

The Sixth Amendment of the United States Constitution provides that in all criminal prosecutions "the accused shall enjoy the right to a speedy and public trial [. . .]" U.S. Const. amend VI. Courts consider four factors (the "Barker" test) when determining whether a defendant's Sixth Amendment right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for delay; (3) the defendant's assertion of his or her speedy trial right; and (4) prejudice to the defendant caused by the delay. See Barker v. Wingo, 407 U.S. at 530; United States v.

Rivera-Fuentes, 979 F. Supp. 2d 233, 238 (D.P.R. 2014) (Besosa,
J.).  None of the factors is a "necessary or sufficient condition
to the finding of a depravation of the right to a speedy trial.
Rather, they are related factors and must be considered together
with such other circumstances as may be relevant."  Barker, 407
U.S. at 533.

## III. DISCUSSION

Irizarry argues that the case against him should be dismissed
with prejudice pursuant to a violation of his Sixth Amendment right
to a speedy trial.  (Docket No. 145.)  The United States opposes.
(Docket No. 146.)  The Court will proceed to analyze Irizarry's
claim pursuant to the Barker test.

### A.   Time of Delay

Irizarry notes that his case has been delayed six years.
His situation entails four separate arrests and indictments, which
constitute a "presumably prejudicial" delay meriting analysis of
the three remaining Barker factors.  (Docket No. 145 at p. 2.)
The United States concedes that "there can be no argument that a
presumptively prejudicial delay has not occurred" but argues that
the delay is mitigated by the complexity of the case.  (Docket
No. 146 at p. 4.)

The length of delay is calculated from arrest or
indictment, whichever occurs first.  See United States v. Muñoz-

Amado, 182 F.3d 57, 61 (1st Cir. 1999).  The entirety of delay

between the first indictment to trial is considered in the inquiry.

United States v. Loud Hawk, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d

640 (1986); Irizarry-Colon, 848 F.3d at 70.  Any delay over one

year is considered presumptively prejudicial and triggers further

inquiry.  See Doggett v. United States, 505 U.S. 647, 652 at n. 1,

112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

        The delay in this case, beginning on the first indictment

in 2005 and running to Irizarry's motion to dismiss in 2011, has

been nearly six years.  This is far beyond the one-year guidepost

for a finding of prejudice.  See Barker, 407 U.S. at 534

(describing a five-year delay between arrest and trial as

"extraordinary."); Irizarry-Colon, 848 F.3d at 68.  The United

States' argument that the case is complex is unpersuasive.  When

this Court dismissed the first indictment it noted:

> Although this case involves a plethora of documentary
> evidence, numerous witnesses, and will take 2-3 months
> to try, it is not complex from the government's
> viewpoint.  This case is an offshoot of the principal
> case [. . .] in which all but two defendants entered
> guilty pleas.  The case was tried as to the two remaining
> defendants, who were convicted and sentenced [. . .]
> More so, the government never requested an 'ends of
> justice' continuance in this case [. . .] To the
> contrary, prosecutor Gil at all times stated he was
> prepared for trial.

(Criminal No. 05-258, Docket No. 98 at p. 4.)  The prosecution

has, by its own admission, been prepared for trial since at least

2005 and has already prosecuted cases with the same underlying facts.  The current case's complexity does not merit an additional six years of preparation.  As such, the Court finds that this prong weighs in Irizarry's favor.

### B.  Reason for delay

The United States points to a variety of factors causing the significant delay in this case.  (Docket No. 146.)  It first pins the blame on Irizarry himself, noting that he managed to have the case dismissed three times.  Id.  In terms of the specific indictments, the government argues that Irizarry prolonged the first case by filing pretrial motions and by failing to raise his STA claims promptly.  Id.  In the second indictment, the United States points out that Irizarry acquiesced to the timing of the trial.  Id. at pp. 4-5.  The United States blames the Supreme Court's ruling in Bloate for the third violation of the STA, arguing that neither the Court nor the government realized the impact Bloate would have on the STA timing period until after the STA expired.[6]  Id. at p. 6.

---

[6]  In the fourth action, the United States argues Irizarry "repeatedly requested continuances of trial due to issues with his defense attorney."  (Docket No. 146 at p. 7.)  The Court does not take the two years after the current motion to dismiss into account in its analysis, and will not address this final argument.  The issues to which the United States avers in its arguments was Irizarry's attorney's cancer diagnosis and treatment.  (Docket No. 71.)

The reason for delay is the "focal inquiry" in the <u>Barker</u> analysis. <u>United States v. Santiago-Becerril</u>, 130 F.3d 11, 22 (1st Cir. 1997) (citations omitted). Deliberate attempts by the government to hamper the defense should be weighted heavily against the government.[7] <u>Barker</u>, 407 U.S. at 531. Reasons for delay such as negligence, on the other hand, "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." <u>Id.</u>

This case is somewhat unique, in that the reason for delay was caused by the need to re-prosecute Irizarry four separate times, for three violations of the STA, and not caused by individualized instances of negligence occurring during a single case. <u>See</u> Criminal No. 07-146, Docket No. 76 at p. 8 (acknowledging that the Court and defense counsel could not find any case in which an indictment had been dismissed twice pursuant to the STA). As such, the Court primarily analyzes (with some

---

[7] In the current motion, Irizarry again accused the government of acting in bad faith. (Docket Nos. 145 at p. 6.) While Irizarry has made similar arguments since 2005, the Court has never found the acts of the government to be in bad faith. <u>See</u> Criminal No. 05-258, Docket No. 98 at p. 5; Criminal No. 07-146, Docket No. 76 at p. 6; Criminal No. 10-024, Docket No. 31 at p. 8. Further, the Court already addressed this question in its earlier decision and found Irizarry's contention unpersuasive. <u>Irizarry-Colon</u>, 820 F. Supp. 2d at 316. Accordingly, the Court does not find that the government acted in bad faith here.

exception) the reasons for dismissal in its evaluation of this prong as opposed to individual instances of delay in the cases themselves.

The Court first addresses the government's contention that Irizarry has prolonged the case by having it dismissed three separate times.[8]  It would be perverse to penalize a defendant, in a Sixth Amendment analysis, for his success in arguing that his speedy trial rights had been violated.[9]  See Barker, 407 U.S. 514 (noting that a defendant's failure to assert his speedy trial right "will make it difficult for a defendant to prove the he was denied a speedy trial.").

In the first indictment, the first motion was filed on October 9, 2005 and the final disposition of all the motions occurred on August 7, 2006.  (Criminal No. 05-258, Docket No. 98 at pp. 1-2.)  After the final motion was adjudicated, however,

---

[8] To support this argument, the government cites to the language in United States v. Colombo, in which the First Circuit Court of Appeals stated "[o]nce a defendant manages to have all charges against him dismissed, the government must, against its will, re-commence the prosecution from square one, a time consuming process. The defendant's efforts therefore, are the main reason for the delay." U.S. v. Colombo, 852 F.2d 19, 23 (1st Cir. 1988).  This language, as the First Circuit Court of Appeals held when it reviewed the current case, is dicta, as Colombo concerned an indictment dismissed on motion by the government, not by the defendant.  Irizarry-Colon, 848 F.3d at 69-70.

[9] At any rate, the dismissals (and subsequent re-indictments) have only contributed fifteen months to the six-year delay in this case.

"there were no other motions or matters awaiting resolution" until
Irizarry filed his motion to dismiss on January 29, 2007 (over
five months later). Id. Docket No. 98 at p. 4. It follows then,
that the government had ample opportunity to bring the case to
trial and yet neglected to do so.

During the second action, Irizarry's counsel agreed to
the late trial date. (Criminal No. 07-146, Docket No. 52 at p. 4.)
Ultimately, however, "[p]roviding a defendant with a speedy trial,
[. . .] is the responsibility of the government and the court, not
of defense counsel." See U.S. v. Doran, 882 F.2d 1511, 1517 (10th
Cir.) (1989); U.S. v. Gomez-Olmeda, 296 F. Supp. 2d 71, 77 (D.P.R.
2003) (Fuste, J.).

The dismissal of the third action can also be placed on
the government's negligence. While it is true that Bloate occurred
during the third case and significantly altered the computation
method of non-excludable days under the STA, the Court noted that
the "decision cannot have come as a surprise to the government,
given that *certiorari* had been granted nearly a year earlier."
(Criminal No. 10-024, Docket No. 31 at p. 6.) Even after Bloate,
the government still had thirty-six days under the new regime with
which to try Irizarry before the STA time limit. See Criminal
No. 10-024, Docket No. 15 at p. 7 (graph of non-excludable days
submitted by Irizarry).

The long delay in this case is primarily attributable to the government's failure to ensure Irizarry a speedy trial. Accordingly, this factor weighs in favor of Irizarry.

### C.  **Irizarry's assertion of his right to a speedy trial**

The government contends that Irizarry "demonstrated a lack of enthusiasm for the speedy trial right which he now asserts," pointing specifically to the fact that Irizarry allowed over 290 days to pass before filing his first STA motion and by acquiescing to the late trial date in the second action. (Docket No. 146 at p. 8.)  Irizarry argues that his three previous successful motions to dismiss on speedy trial grounds have more than satisfied this prong. (Docket Nos. 145 at pp. 5-6; 147 at p. 3.)

A defendant's assertion of his speedy trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Barker, 407 U.S. at 531-32. A defendant should give some indication, prior to the assertion of a speedy trial violation, that he wishes to proceed to trial. Muñoz-Amado, 182 F.3d at 62. Generally, a defendant is expected to zealously pursue his or her right, and not merely wait until a speedy trial motion "[becomes] a possibly viable way to preclude consideration of the merits of the case." U.S. v. Colombo, 852 F.2d 19, 26 (1st Cir. 1988).

In the first case, Irizarry certainly waited to assert his right until it was tactical for him to do so. <u>See</u> Criminal No. 05-258, Docket No. 98 at p. 5 ("[D]efendant could have filed his Speedy Trial Act dismissal motion much earlier once the 70 days expired, but waited to do so.") Subsequently, however, Irizarry has filed three additional speedy trial motions. (Criminal No. 07-146, Docket No. 56; Criminal No. 10-024, Docket No. 15; and, in this case, Docket No. 17.) These assertions are more than sufficient to tip the scales in Irizarry's favor. <u>See</u> <u>U.S. v. Muñoz-Franco</u>, 487 F.3d 25, 61 (1st Cir. 2007) (finding three speedy trial objections to weigh in favor of defendant); Criminal No. 10-024, Docket No. 31 at p. 14 (finding Irizarry's motion to dismiss the third indictment an assertion of his right to a speedy trial that weighed in his favor in the <u>Barker</u> analysis).

### D.    **Prejudice**

Irizarry contends that the length of delay in this case relieves him of his burden to prove prejudice. He contends, in the alternative, that he has suffered deteriorating health problems and has been prejudiced by the deaths of two potential witnesses, Jorge Arroyo ("Arroyo") and Blas Ferraiuoli ("Ferraiuoli"). (Docket No. 145 at pp. 6-7.) The government counters that Irizarry's anxiety is irrelevant to the analysis

because the government has never acted in bad faith, and argues that Irizarry has not proven that the witnesses would have included exculpatory evidence that could not have been obtained by similarly situated individuals.

When considering prejudice, courts focus on three speedy trial interests: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. <u>Barker</u>, 407 U.S. at 532. Among the three, the most serious consideration is protection against impairment of the defense. <u>Id.</u> Proof of particularized prejudice, however, is not essential to every speedy trial claim. <u>See Doggett</u>, 505 U.S. at 655.

**1. Oppressive Pretrial Incarceration**

The first interest has no bearing here because Irizarry remained free on bail prior to trial. (Docket No. 146 at p. 9.)

**2. Anxiety of the Accused**

Irizarry avers that he suffers "psychological damage" and deteriorating health caused by the delayed prosecution. (Docket No. 147 at p. 4.)

Considerable anxiety normally attends criminal charges, thus only "undue" pressures are considered under this factor. <u>Muñoz-Franco</u>, 487 F.3d at 61.

The Court does not lightly dismiss the anxiety Irizarry must have suffered as the result of four separate arrests and indictments. Irizarry has failed to show, however, that he has experienced anxiety beyond that expected of a criminal prosecution, nor has he shown that his health problems were caused by the stresses of the prosecution and not merely the passage of time. See id. (Assigning "negligible weight" to the second factor when defendant failed to allege "undue pressure".) Accordingly, the Court finds no undue pressure that has caused prejudice in this case.

### 3.    Impairment of Defense

Irizarry contends that the delay in the case has impaired his defense due to the loss of two potential witnesses. (Docket No. 145 at p. 6.) The government counters that Irizarry has failed to show that the witnesses would have provided exculpatory evidence, or that Irizarry could not have gained similar evidence from other sources. (Docket No. 146.)

Barker held that "[i]f witnesses die or disappear during a delay, the prejudice is obvious." Barker, 407 U.S. at 532. That said, "a defendant must do more than allege that witnesses' memories had faded or that evidence has been lost that might have been helpful to him." Muñoz-Franco, 487 F.3d at 59.

Irizarry contends that Arroyo, an attorney for another defendant in the criminal case, "would have testified regarding, and authenticated documentary evidence having to do with, the conduct of the government's investigation of Mr. Irizarry Colon." (Criminal No. 07-146, Docket No. 56 at p. 21.) Irizarry never clarifies what this "conduct" was or what the "documentary evidence" consists of. He has also not provided any proof that Arroyo was even willing to testify on Irizarry's behalf.[10] See Muñoz-Franco, 487 F.3d at 59.

Ferraiuoli worked for the dairy farmers identified as government witnesses, providing assistance regarding tax credits related to Hurricane Georges. (Criminal No. 07-146, Docket No. 56 at p. 21.) Irizarry contends that Ferraiuoli "would have testified favorably for the defense regarding statements and conduct of [Irizarry] during those critical periods of time." Id. Again, Irizarry fails to provide any evidence to back up his claim that Ferraiuoli would have testified favorably. See Muñoz-Franco,

---

[10] The evidence suggests that Arroyo may have refused to take stand for Irizarry — as it would have potentially put his own client at risk. (Criminal No. 05-258, Docket No. 81-2 at p. 7) (letter from Arroyo to Irizarry's attorney) ("In light of the foregoing, we urge you [Irizarry] to desist from your expressed intent to call Ms. Morales to the witness stand. I would graciously accept service of a subpoena for her. However, she would invoke the Fifth Amendment and would otherwise exhaust all legal remedies to avoid having to take the stand.")

F.3d 25 ("Finally, appellants contend that the remaining eight unavailable witnesses [. . .] 'could have testified' or 'could have confirmed' information relating to financial practices at Caguas, without offering any evidence that these individuals would, in fact, have been able to provide such testimony.")

Irizarry cannot simply point towards two tangential persons who have unfortunately died and claim, in a conclusory manner, that their deaths have prejudiced him. See Muñoz-Franco, 487 at 59 (finding no prejudice where delay caused unavailability of nineteen witness, because fifteen had died, three were "seriously ill" and another could not be located.")  The Court finds that the unfortunate deaths of Arroyo and Ferraiuoli have not impaired Irizarry's defense.

The Supreme Court, however, has recognized that extreme delay can inherently hamper a defendant's ability to defend a case, because it "compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." Doggett, 505 U.S. at 655 (finding a delay of eight and a half years to be significantly prejudicial); Rashad v. Walsh, 300 F.3d 27, 42 (1st Cir. 2002) ("[W]hen the pretrial delay is grossly excessive, the fourth Barker factor can tilt in the defendant's favor even though no showing of actual prejudice has been made.").

Significant delays are particularly prejudicial in cases where the

delay is caused by prosecutorial negligence:

> And such is the nature of the prejudice presumed that
> the weight we assign to official negligence compounds
> over time as the presumption of evidentiary prejudice
> grows.  Thus, our toleration of such negligence varies
> inversely with its protractedness, and its consequent
> threat to the fairness of the accused's trial.  Condoning
> prolonged and unjustifiable delays in prosecution would
> both penalize many defendants for the states fault and
> simply encourage the government to gamble with the
> interests of criminal suspects assigned a low
> prosecutorial priority.  The Government, indeed, can
> hardly complain too loudly, for persistent neglect in
> concluding a criminal prosecution indicates an
> uncommonly feeble interest in bringing an accused to
> justice; the more weight the government attaches to
> securing a conviction, the harder it will try to get it.

Doggett, 505 U.S. at 657 (citations omitted).

        Here, the relevant acts occurred from 1998 through

2000.  Irizarry was first indicted in 2005.  Six years, then, had

passed from the indictment to Irizarry's final motion to dismiss,

and eleven years had passed since the relevant criminal actions.

It follows that there has been, inherently, some "erosion of

exculpatory evidence and testimony" in that time period.  See

Doggett, 505 U.S. at 655; Rashad, 300 F.3d at 42.  And while "delay

is a two-edged sword," the delay in this case has been almost

exclusively caused by the government's failure to monitor the

passing of non-excludable days under the STA.  See Doggett, 505

U.S. at 657; Rashad, 300 F.3d at 41 (citing U.S. v. Aguirre, 994

F.2d 1454, 1461 (9th Cir. 1993) (Pergerson, J., dissenting) (finding presumptive prejudice when governmental negligence caused a five-year delay between indictment and trial.)) The Court agrees with the sound reasoning of the Supreme Court, and finds that the six-year delay in this case has prejudiced, albeit slightly, Irizarry's ability to defend his case.

## IV. CONCLUSION

All four prongs of the Barker test weigh in Irizarry's favor. The Court finds that Irizarry's Sixth Amendment right to a speedy trial has been violated, and accordingly, **GRANTS** his motion to dismiss, and **DISMISSES** the indictment against him **with prejudice**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 2, 2017.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE